|  |  |
|---|---|
| YEDIDAH "KATIE" GRIFFIN, | IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL CIRCUIT, IN AND FOR DUVAL COUNTY, FLORIDA |
| Plaintiff, | CASE NO.: 22-CA- |
| v. | FLA BAR NO.: 0739685 |
| NIVEL PARTS & MANUFACTURING CO., LLC, and MORGAN STANLEY CAPITAL GROUP, INC., | |
| Defendants. _____/ | |

## COMPLAINT

Plaintiff, YEDIDAH GRIFFIN, hereby sues Defendants, NIVEL PARTS & MANUFACTURING CO., LLC, and MORGAN STANLEY CAPITAL GROUP, INC. and alleges:

### JURISDICTION

1. This is an action brought under 42 U.S.C. §12101 et seq,, the Family and Medical Leave Act (FMLA), codified 29 U.S.C. §2612 et seq., and under the Florida Civil Rights Act, codified at Chapter 760, Florida Statutes.

2. This is an action involving claims which are, individually, in excess of Thirty Thousand Dollars ($30,000.00).

### THE PARTIES

3. At all times pertinent hereto, Plaintiff, YEDIDAH GRIFFIN, has been a resident of the State of Florida and was employed by Defendant. Plaintiff is a member of a protected class due to her disability. She also reported discrimination and was the victim of retaliation after said reporting.

4. At all times pertinent hereto, Defendant, NIVEL PARTS & MANUFACTURING CO., LLC, been conducting business under the laws of the State of Florida. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's employer as it relates to these claims.

5. At all times pertinent hereto, Defendant, MORGAN STANLEY CAPITAL GROUP, INC., been conducting business under the laws of the State of Florida. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

6. Plaintiff has also satisfied all conditions precedent to bringing this action, if any.

## STATEMENT OF THE ULTIMATE FACTS

7. Plaintiff began her second period of employment with Defendant Nivel on or about October 2019 and held the position of Senior Buyer at the time of her wrongful termination on October 18, 2021. Four months prior to Plaintiff's termination, around May or June, 2021, Morgan Stanley purchased Nivel and became Plaintiff's employer up to her termination.

8. Despite her stellar work performance during her employment with Defendants, Plaintiff has been subjected to disparate treatment, different terms and conditions of employment, and was held to a different standard due to her actual and or perceived disabilities and record of impairment, and for Defendant's failure to offer her FMLA leave after knowledge of her illness and has been retaliated against thereafter. She has also been the victim of retaliation after reporting discrimination.

9. The disparate treatment and retaliation came at the hands of specifically but not limited to VP Manufacturing Paul Newman ("NEWMAN"), VP of Supply Chain Scott Blanton ("BLANTON"), HR Representative Chelsie Cosby ("COSBY"), and Liz Wayne ("WAYNE").

10. In July 2020, Plaintiff had back surgery and needed to be off work to recover from her surgery. Prior to July 2020, Plaintiff did not need any accommodation.

11. While she was recovering from her back surgery, and had returned to work, working both in the office and teleworking like many other employees due to Covid, in September 2020, Plaintiff was diagnosed with cancer, which led to Plaintiff work from home more than she was working in the office.

12. At all times pertinent hereto, Plaintiff was able to perform the essential functions of her position with Defendant Nivel, with and/or without accommodations. While Plaintiff worked from home, there were never any comments about poor work performance, she was never reprimanded, nor placed on a performance improvement plan.

13. The first week of October, 2020, she had to relocate to Jacksonville to be closer to her physicians. She continued working, notwithstanding her illness.

14. Around mid-October 2020, Plaintiff was required to go to radiation treatment from October through December, 2020. Plaintiff made up some of this time and took some time off for her treatments. However, she began to notice that her work assignments were decreasing and matters were being assigned to other employees through December 2020.

15. In December 2020, Defendant Nivel refused to allow Plaintiff to post flyers to raise money during her illness but allowed another employee to post flyers to raise money for his child. Other employees had also attempted to raise money at Defendant Nivel without complaint.

16. From December 2020 through April 2021, Plaintiff worked exclusively remotely from home due to her health risks because of Covid. Plaintiff performed her job duties well but her work assignments were still decreasing and she was not busy working full time. She is a self-starter and found jobs to help with during this time period.

17. In February 2021, while she was working remotely, Plaintiff learned of her newly developed thyroid cancer and shortly thereafter had her thyroid removed at Mayo clinic.

18. From the inception of her illness, Plaintiff continued to keep her employer, through primarily her supervisor, Blanton, updated about her medical condition and diagnoses. She also kept the HR Representative, Crosby, updated about her medical diagnoses and treatment.

19. In January of 2021, Blanton performed Plaintiff's annual review from 2020 and verbally said "Everything you've done has been great as always, but you've lost a lot of traction in 2020 from being out a lot," referring to her illnesses.

20. Around the end of April, 2021, Plaintiff was pressured and questioned about returning to work by her supervisor, Blanton, who told her that it was the CEO of Nivel, Brent Moore, who wanted her back in the office. Blanton was well aware of her medical restrictions and that she was high risk of suffering serious medical consequences if she caught Covid.

21. While Plaintiff was working remotely, she performed her job duties well without complaint. Further, she was able to perform the essential functions of her position while working remotely.

22. In late April, 2021, Plaintiff returned to work in Defendant Nivel's office and was notified that Paul Newman was her new supervisor. On multiple occasions thereafter, Plaintiff reached out to Newman and to Human Resources (HR), without any response. She even contacted HR Representative Crosby because Newman was ignoring her and she needed to determine if she

was performing the correct assignments. Newman never talked to Plaintiff other than in group settings and refused to meet with Plaintiff one-on-one to determine if she was correctly performing her work.

23. On the first day back in the office, Plaintiff learned from Blanton that Defendant Nivel was trying to replace her and was advertising her position. However, after interviewing prospects for Plaintiff's position, Plaintiff was told by Blanton that they did not pan out and that they would "just keep" her. Blanton later told Plaintiff that they decided not to hire the two applicants because they were not qualified, and because Plaintiff was "the best option they got".

24. After she returned to work in April, 2021, it was clear that something was happening to her employment. Her new supervisor, Newman, would not talk to her, her office was taken away from her and she was placed in a small cubicle, her job duties were removed and she was ostracized in the workplace.

25. Plaintiff had previous been told by Blanton around that time, April, 2021, the Defendant Nivel "would replace her position" if her medical condition returned. This was later confirmed as the Plaintiff was undergoing treatment due to her medical condition and was terminated after she returned to work while she was still going to her medical appointments every two weeks. She continued to perform the essential functions of whatever job duties were assigned to her, with and/or without accommodations.

26. In April, 2021, after Plaintiff learned that Defendant Nivel was interviewing people for her position, she told HR Representative Crosby and Blanton that she thought that she was being pushed out because of her illness and time off work.

27. In late May or June, 2021, Defendant Morgan Stanley bought Nivel, but the employees of Nivel remained with Morgan Stanley. The name "Nivel" is still on the signs at the

location where Plaintiff worked and the outside world would not know that Morgan Stanley owns Nivel from the outside appearance of that location.

28. In September 2021, Plaintiff notified Blanton of the neglect she experienced from Newman and informed Blanton of her fear of termination.

29. Between April and the end of September, 2021, Plaintiff went to HR Representative Crosby on at least three occasions to tell her that she was afraid she was about to get fired and that Newman would not talk to her. She told Crosby that she thought that she would be fired because of her illness and the time off that was required for her doctors' appointments.

30. The week before she was fired, on October 12, 2021, Plaintiff went into Crosby's office and specifically told her again that she wanted it on "record" that she felt she was about to be fired because she was taking time off because of her illness. During this meeting, Plaintiff informed Cosby of newly developed cysts on her spine and that they were not cancerous. Crosby responded to Plaintiff's concerns about being fired by telling her that if she was in remission, her job should be fine.

31. Plaintiff was fired by Crosby and James Crosten, the VP of HR on October 18, 2021.

32. At no time, other than when Plaintiff was hospitalized, was she advised that she could take FMLA for her doctor's appointments and other time off that she needed due to her illnesses. She was led to believe that the FMLA would be a protection for her while she was in the hospital and was never advised by Defendants Nivel or Morgan Stanley, that she could taken intermittent FMLA leave to protect her job although both Defendants knew of her serious disabling medical conditions.

33. Plaintiff's termination letter received from the Defendant specified "No work to do" and "position eliminated" as the reason for termination. However, a new job title with the same duties as the Plaintiff's previous position was advertised within a week of her termination.

34. Subsequent to her termination, Plaintiff has received minimal response when applying for over ten open positions with other employers leading Plaintiff to believe that Defendant may be giving her a negative job reference, her right to COBRA was delayed, and she was almost coerced into signing a "separation agreement" which would have taken away her opportunity to sue the Defendant.

35. After she was fired, Plaintiff frequently communicated with Cosby and James Crosten about her need for re-hire so that she could continue her insurance and proceed with medical operations. They refused to rehire her.

36. Post termination, Cosby informed the Plaintiff that she was not eligible for re-hire and could not use her insurance until she signed the "separation agreement," which meant that Plaintiff would lose her right to file this lawsuit if the agreement was signed. Defendant also later changed insurance in December 2021 and did not notify Plaintiff, causing further delay and miscommunication when Plaintiff had a scheduled doctor's appointment.

37. Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

## COUNT I
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

38. Paragraphs 1 through 37 are re-alleged and are incorporated herein by reference.

39. This is an action against Defendant for failing to advise Plaintiff of her right to intermittent leave under the FMLA.

40. After attempting to take leave for serious health conditions, Defendant took adverse personnel actions against Plaintiff and failed to advise her of her right to FMLA leave.

41. Plaintiff was denied the opportunity of rights and benefits conferred by the FMLA.

42. Defendant's violations of the FMLA were willful.

43. As a direct and proximate result of Defendants willful, wanton, and malicious acts described in part above, Plaintiff has sustained damages for the loss of employment, as well as the security and peace of mind it provided. Plaintiff has incurred damages for lost wages, and other damages attendant with the loss of his job. These damages have occurred in the past, are occurring at present and will continue in the future.

## COUNT II
## DISABILITY DISCRIMINATION

44. Paragraphs 1 through 37 are realleged and incorporated herein by reference.

45. This is an action against Defendant for disability discrimination brought under Chapter 760, Florida Statutes and 42 U.S.C. §12101 et seq.

46. Plaintiff has been the victim of discrimination on the basis of her disability, perceived disability and/or her record of having an impairment. During the course of Plaintiff's employment with Defendant, she was treated differently than similarly situated nondisabled/perceived-as-disabled employees.

47. Defendant is liable for the differential treatment and its refusal to accommodate Plaintiff, as well as its failure to engage in the interactive process with Plaintiff, which adversely affected the terms and conditions of Plaintiff's employment with Defendant. Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

48. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were disability/perceived-disability based and in violation of the laws set forth herein.

49. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein lead, at least in part, to Plaintiff's termination.

50. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon disability or perceived disability or her record of having an impairment under the laws enumerated herein.

51. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief and to punitive damages.

## COUNT III
## RETALIATION

52. Paragraphs 1 through 37 are realleged and incorporated herein by reference.

53. Defendant is an employer as that term is used under the applicable statutes referenced above.

54. The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported or opposed unlawful employment practices adversely affecting her under Chapter 760, Florida Statutes, and other statutory provisions cited herein.

55. The foregoing unlawful actions by Defendant were purposeful.

56. Plaintiff voiced opposition to unlawful employment practices during her employment with Defendant and was the victim of retaliation thereafter, as related in part above.

57. Plaintiff is a member of a protected class because she reported unlawful employment practices and was the victim of retaliation thereafter. There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

58. As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages are continuing and are permanent. Plaintiff is entitled to punitive damages and to injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c) enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d) enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e)      enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f)      award Plaintiff interest where appropriate; and

(g)      grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 26th day of September 2022.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
Marie@mattoxlaw.com
Secondary emails:
marlene@mattoxlaw.com
michelle@mattoxlaw.com

ATTORNEYS FOR PLAINTIFF